**HARLAN KENTUCKY VIRGINIA COAL, INC., Appellant,**

v.

**Ronald Keith BAKER; Hon. J. Landon Overfield, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**AERO ENERGY, Appellant,**

v.

**James THORNSBURY; Hon. Ronald W. May, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

Nos. 96–CA–1540–WC, 96–CA–1565–WC.

Court of Appeals of Kentucky.

Oct. 10, 1997.

Case Ordered Published by
Court of Appeals Dec. 5, 1997.

Eileen M. O'Brien, Lexington, for Appellant Harlan Kentucky Virginia Coal, Inc.

Natalie D. Brown, Lexington, for Appellant, Aero Energy.

Tim Wilson, Lexington, for Appellee, Ronald Keith Baker.

J. Drew Anderson, Prestonsburg, for Appellee, James Thornsbury.

Before GUIDUGLI, KNOPF and SCHRODER, JJ.

## OPINION

GUIDUGLI, Judge.

The Workers' Compensation Board (WCB) consolidated these two appeals which both present the same question as to the statutory interpretation of KRS 342.732(1)(a). We affirm the Board's opinion.

KRS 342.732(1)(a) was amended effective April 4, 1994, to include a requirement that the direct receipt of retraining incentive benefits (RIB) by a worker could only occur when he had left the mining industry "through no fault of his own":[1]

> When the employee, *through no fault of his own*, is no longer working in the mining industry in the severance or processing of coal as defined in KRS 342.0011(23)(a), then any remaining benefits shall be paid directly to the employee on the same monthly basis as provided in KRS 342.040. (emphasis added).

The question presented by this consolidated appeal is one of statutory interpretation—the meaning, if any, of the phrase, "through no fault of his own."

Appellee, James Thornsbury (Thornsbury), filed a claim for RIB on September 2, 1993. Seven months later, on April 4, 1994, the 1994 Kentucky Legislature's amendment to the RIB statute, KRS 342.732(1)(a), took effect. The 1994 amendment made benefits payable directly to the coal miner *only if* he was no longer working in the mining industry. If the employee continued to work as a coal miner and was actively enrolled and participating in a bona fide, approved training or education program, the RIB were paid directly to that institution. The RIB ceased for any period in which the employee no longer participated in the program.

On June 27, 1994, the Administrative Law Judge (ALJ) awarded Thornsbury RIB under the pre-1994 version of KRS 342.732(1)(a), i.e. payable directly to Thornsbury. Because Thornsbury continued his employment in the coal mining industry, Aero Energy appealed. The issue was whether KRS 342.732(1)(a), as amended, should be applied retroactively to prevent Thornsbury from receiving RIB directly while still employed in the coal mining industry. The case went to the Kentucky Supreme Court which held the 1994 amendment was remedial legislation which applied to all claims pending on or after its effective date. *Thornsbury v. Aero Energy*, Ky., 908 S.W.2d 109, 112 (1995).

On remand, Thornsbury moved for his RIB payments to be paid directly to him because he was no longer working in the coal business. His deposition testimony indicated he left the mines because his body could not handle it anymore and he was just worn out. Thornsbury was awarded direct benefits. Aero Energy appeals, claiming Thornsbury's departure from the coal business was voluntary and thus not "through no fault of his own" as required by the 1994 statute to receive direct payment of RIB.

Appellee, Ronald Keith Baker (Baker), filed his claim for RIB against Harlan Virginia Coal Company, Inc. (Harlan) in March of 1994, and was awarded benefits by opinion and award dated January 13, 1995. The ALJ ordered the claim held in abeyance pending a decision from the Kentucky Supreme Court in *Thornsbury v. Aero Energy, supra.* While Baker's claim was in abeyance, and prior to the decision of *Aero*, Baker filed a

---

1. This language has been removed from the most recent version of KRS 342.732(1)(a) effective December 12, 1996.

motion requesting direct payment of benefits because he was no longer working in the mining industry. Harlan filed an objection alleging that Baker had failed to show that he had left the mining industry, "through no fault of his own" as required by KRS 342.732(1)(a). Baker was awarded direct payment of benefits and Harlan appealed.

In 1987, RIB were created for the purpose of encouraging coal miners with category I pneumoconiosis and no respiratory impairment to leave the mining industry. The idea was to prevent the disease from progressing in these workers—resulting in increased costs to the employer and the workers' compensation system. Prior to the amendment at issue, a coal worker continuing in the mining industry was eligible for direct payment of RIB. At that time, the statute did not require that the monies be used for the purpose of retraining, or even that the worker leave the industry. See *Eastern Coal Corp. v. Blankenship*, Ky., 813 S.W.2d 808 (1991).

The 1994 amendment was intended to effectuate the original purpose of RIB—encourage workers to obtain employment outside the coal industry before they became occupationally disabled. See *Thornsbury v. Aero Energy*, Ky., 908 S.W.2d 109 (1995). Accordingly, the 1994 statute separated the conditions for the award of RIB, from the conditions for payment. KRS 342.732(1)(a) requires the ALJ to make a RIB award once a finding has been made that the worker suffers from category I pneumoconiosis. However, in determining the appropriate manner of payment of RIB awards, the 1994 statute creates two categories for injured workers: those who are no longer employed in the mining industry and those who remained employed in the mining industry. *Id.*

The plain language of the statute provides that RIB benefits may be paid directly to the worker only if the worker is no longer working in the mining industry, "through no fault of his own." The WCB held that absent a showing of discharge for misconduct or dishonesty connected with the work, an individual who leaves the mining industry for any other reason has done so "through no fault of his own."

Besides employment status, the statute establishes no other criteria or requirements which must be met before a worker no longer employed in the mining industry is qualified for direct payment of RIB benefits. The only effect the amendment had on the direct payment of benefits to a worker who is no longer employed in the mining industry is when that worker is discharged for misconduct or dishonesty connected with the work.

We believe this interpretation of the statute best promotes the objects and carries out the purposes and intent of the legislature as reflected in the Workers' Compensation Act. We therefore hold that direct payment of RIB awards to workers who choose to leave the mining industry voluntarily does not violate the purpose or the plain language of the 1994 amendment to KRS 342.732(1)(a). The amendment was to prevent abuse in cases where a worker continuing in the mining industry was awarded direct payment of RIB and then made no effort to seek retraining or an alternative course of employment. See *Thornsbury, supra* and *Blankenship, supra.*

Neither Mr. Baker or Mr. Thornsbury remain employed in the mining industry. Regardless of the effect that the possibility of an RIB award had on their respective decisions to leave the mining industry, and regardless of their intended use of the funds, the purpose of the statute has been realized because the claimants are no longer exposed to the hazards of the disease. There is no proof in the record that either Mr. Baker or Mr. Thornsbury were discharged for misconduct or dishonesty connected with their work. Therefore, we hold they are entitled to direct payment of their remaining RIB awards.

We affirm the May 10, 1996, opinion of the Workers' Compensation Board in these consolidated appeals.

KNOPF, J., concurs.

SCHRODER, J., concurs in result only.